MARK BUTLER & ASSOCIATES
Mark J. Butler, Bar No. 207909
mark.butler@mbutler-law.com
2100 Main Street, Suite 220
Newport Beach, CA 92660
Telephone: (949) 500-6277

Attorney for Plaintiff Advanced Research Center, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Advanced Research Center, Inc., a California corporation, | Case No.: 22-cv-2862-SSS-AFMx |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| vs. | **1) BREACH OF WRITTEN CONTRACT;** |
| | **2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| Eisai, Inc. a Delaware corporation; Worldwide Clinical Trials Holdings, Inc., a Delaware corporation; Worldwide Clinical Trials; an entity of unknown form; and DOES 1 - 50 inclusive, | **3) INTENTIONAL INTERFERENCE WITH CONTRACT;** |
| | **4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND** |
| Defendants. | **5) NEGLIGENT INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE** |
| | **<u>JURY TRIAL DEMANDED</u>** |
| | **<u>DECLARATORY RELIEF</u>** |
| | **<u>REQUESTED</u>** |

1

Plaintiff Advanced Research Center, Inc. alleges as follows:

## PARTIES TO THE ACTION

1.     Plaintiff Advanced Research Center, Inc. ("Plaintiff" or "ARC") is and at all times relevant to this complaint was a California corporation doing business in the city of Anaheim in the State of California.

## DEFENDANTS

2.     Plaintiff is informed and believes and on that basis alleges that defendant Worldwide Clinical Trials Holdings, Inc. is, and at all times relevant to complaint was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in North Carolina.

3.     Plaintiff is informed and believes and on that basis alleges that defendant Worldwide Clinical Trials is, and at all times relevant to this complaint was, an entity of unknown form that operated in California.  Plaintiff is further informed and believes and on that basis alleges that this defendant does, and at all times relevant to this complaint did, transact business in the State of California, and that some of the tortious, unlawful, unfair, fraudulent, deceptive, untrue, and misleading conduct that this defendant engaged in, as alleged in this complaint, occurred in Los Angeles County, and/or the damages from that misconduct occurred in or arose from California in Los Angeles County.

4.     Plaintiff is informed and believes and on that basis alleges that defendant Eisai, Inc. is, and at all times relevant to this complaint was, a corporation organized

FIRST AMENDED COMPLAINT

and existing under the laws of the State of Delaware with its principal place of business located in that State of New Jersey.  Plaintiff is further informed and believes and on that basis alleges that this defendant does, and at all times relevant to this complaint did, transact business in the State of California, and that some of the tortious, unlawful, unfair, fraudulent, deceptive, untrue, and misleading conduct that this defendant engaged in, as alleged in this complaint, occurred in Los Angeles California and/or the damages from that misconduct occurred in or arose from California in Los Angeles County.

## **DOE DEFENDANTS**

5.      The true names and capacities of the Defendants, DOES 1 through 50, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiff as herein alleged.

6.      Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named Doe Defendants is in some manner responsible for the damages to Plaintiff as alleged in this Complaint.  Plaintiff will amend this Complaint to show the true names and capacities of these fictitiously named Doe Defendants after their true

3

names and capacities have been ascertained.

7.     Plaintiff is informed and believes and on that basis alleges that at all times herein mentioned, DOE DEFENDANTS 1-20 were the agents and/or joint tortfeasors of defendant Worldwide Clinical Trials Holdings, Inc., and in doing the things mentioned herein were acting within the scope of such agency and/or joint actions.

8.     Plaintiff is informed and believes and on that basis alleges that at all times herein mentioned, DOE DEFENDANTS 21-40 were the agents and/or joint tortfeasors of defendant Worldwide Clinical Trials, and in doing the things mentioned herein were acting within the scope of such agency and/or joint actions.

9.     Plaintiffs are informed and believe and on that basis allege that at all times herein mentioned, DOE DEFENDANTS 41-50 were the agents, employees, affiliates, related entities, and/or joint tortfeasors of defendant Eisai, Inc., and in doing the things mentioned herein were acting within the scope of such agency, employment, affiliation, relationship and/or joint actions.

## JURISDICTION AND VENUE

10.     Venue was proper in the Los Angeles County Superior Court because, upon information and belief, defendants Worldwide Clinical Trials Holdings, Inc. and Worldwide clinical trials conducted business within Los Angeles County.

11.     The monetary damages sought by Plaintiff exceeds seventy-five thousand dollars, and will be established according to proof at trial.

4

12.    The Court properly can and should apply California law to all of the claims and issues asserted herein.  California is the state in which the contract at issue in this case was to be performed, all of Plaintiff's interaction with defendants Worldwide Clinical Trials Holdings, Inc. and Worldwide Clinical Trials took place in California, and the California is the state in which the misconduct alleged herein emanated.  As such, no state has a greater interest than California in having its law apply to this case.

## BRIEF FACTUAL BACKGROUND

13.    Plaintiff, Advanced Research Center, Inc. ("Plaintiff" or "ARC") is an entity with its principal place of business located in Anaheim, California that, among other things, contracts with companies for the human clinical testing of pharmaceuticals as part of process for new pharmaceuticals to eventually be approved by various governmental agencies for use as an approved medication.

14.    ARC entered into a written contract with defendants Eisai, Inc. whereby ARC's facility would host a clinical trial of the new pharmaceutical.  As part of this contract, ARC located potential study patients who fit certain criteria, ARC submitted those potential study patients to Eisai, Inc. and its agents defendants Worldwide Clinical Trials Holdings, Inc. and Worldwide Clinical Trials (all three collectively "Defendants") for Defendants' approval of the patients to be in the study conducted by ARC.  ARC conducted a clinical trial of the new pharmaceutical on the study patients that were approved by Defendants, with ARC reporting on the patients while the clinical trial was ongoing.

5

15.     As part of its performance under the contract, ARC in fact located a number of potential study patients, and submitted those potential study patients to Defendants for their approval as study participants.

16.     Defendants approved a number of the patients located and submitted to them by ARC, and ARC enrolled only those patients approved by Defendants in the study and conducted the study/clinical trial under the terms of its contract with Eisai, Inc. and the associated protocols.  In performing its obligations under the contract, ARC met all of its material obligations using those patients approved by Defendants.  In mid-2019, while the clinical trial was ongoing, Defendants made false claim that ARC had improperly recruited some of its study patients from homeless shelters.  That was false, but Defendants used that false allegation as a pretext for terminating ARC as a study site before the completion of the study.  So Defendants terminated Plaintiffs as a study site under that false pretense despite the fact that ARC was properly following all protocols and fully performing all of its material obligations under its contract with Eisai, Inc.

17.     In addition to falsely accusing ARC of recruiting patients from homeless shelters, and using that false allegation as a pretext to improperly terminate ARC as a study site, Eisai, Inc. breached the contract by failing to fully and to timely pay ARC's fees earned for the work performed by ARC pursuant to the terms of the contract. Moreover, not only did Eisai, Inc. fail to timely pay the amounts owed ARC when due pursuant to the contract terms, but even after ARC complained about that failure, and

even after ARC spent well over a month challenging Defendants' position regarding the actual amount due ARC for work performed by ARC on the study before Defendants' terminated the contract, and even after Defendants arrived to Defendants' (incorrect) stated position as to how much Eisai, Inc. admittedly owed ARC (which amount was not correct), Eisai, Inc. continued to fail to even tender to ARC the amount that Defendants acknowledged that Eisai, Inc. owed to ARC for well over 6 months after Defendants came to their incorrect calculation.  In addition, when Eisai, Inc. did finally tender the insufficient payment to ARC, Eisai, Inc. attempted to condition that payment of the funds upon two conditions: 1) Eisai, Inc. insisted that ARC agree that Defendants' incorrect calculation of the amount owed by Eisai, Inc. was in fact correct (when it was not) andrepresented payment in full to ARC for all of the work/services ARC performed under the contract, when in fact the actual amount ARC was owed under the express terms of the contract was much more than the amount as calculated by Defendants; and 2) Eisai, Inc. also insisted that ARC sign a written release before Eisai, Inc. would pay ARC, releasing all of Defendants from any and all claims related to Defendants' wrongful conduct toward ARC.  ARC steadfastly refused to agree to any such release, or to the accuracy of the amounts Eisai, Inc. claimed it owed ARC, and never released any of the Defendants despite intense financial pressure resulting from Defendants' wrongful conduct and the extreme damage they caused ARC.

18.    Moreover, after Defendants improperly terminated ARC as a study site, other Study Sponsors with which ARC had agreements to act as a clinical trial study

FIRST AMENDED COMPLAINT

site for other pharmaceutical studies breached and/or cancelled their agreements with ARC. ARC later determined that Defendants had actively contacted some of those other Study Sponsors and made statements to those other Study Sponsors which caused those other Study Sponsors to breach or cancel their contracts with ARC, or stop doing future business with ARC.

19.     In addition, after Defendants improperly terminated ARC as a study site, on multiple occasions ARC applied to be a study site with other Study Sponsors with which ARC had a previous business relationship, but ARC was not selected as a study site. ARC later determined that the reason it was not selected as a study site by those Study Sponsors with which it had a previous relationship was because Defendants affirmative, improper and ongoing tortious actions against ARC interfered with ARC's relationship with those other Study Sponsors, resulting ARC not being selected by them as a study site by them.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against Eisai, Inc.)

20.     Plaintiff hereby reincorporate by reference all the allegations in paragraphs 1 through 19 as if they were set forth in full in this paragraph.

21.     Plaintiff and Eisai, Inc. entered into a written contract pursuant to which Plaintiff would perform certain services for Defendants as a clinical trial site for a particular pharmaceutical (i.e. medication), and Eisai, Inc. was to pay ARC for those services performed based on the terms set forth in Attachment A to the contract

8

between ARC and Eisai, Inc. titled "Payment Schedule and Budget" which is attached to this First Amended Complaint as Exhibit 1 in the exact same redacted form that Eisai, Inc. previously filed with this Court. ARC is attaching the redacted version due to Eisai, Inc.'s prior claim that the redacted information was confidential and could only be filed in un-redacted form unless it was filed under seal, and this First Amended Complaint is not being be filed under seal.

22.    Plaintiff fully performed all material conditions, covenants, and promises to be performed on Plaintiff's part under the contract, or it has been excused from having to do those things.

23.    Eisai, Inc. breached the contract by, among other things, failing to fully pay ARC for the amounts Eisai, Inc. owed it for actual work performed by ARC before the contract was terminated; failing to timely pay ARC amounts owed it due for work performed by ARC; attempting to improperly condition any post-contract termination payment to ARC on ARC agreeing to accept less than it was owed by Eisai, Inc. as full payment and upon ARC signing a release of claims against all Defendants. As of the date when Eisai, Inc. terminated/breached the contract, Eisai, Inc. owed ARC at least $212,254.30 for work already performed which ARC, which ARC had demonstrated to Defendants on multiple occasions with documents and breakdowns of the amounts due and owing to ARC. Eisai, Inc. refused to pay ARC in full, and instead eventually paid ARC only $176,018, and did so while waiting over 6 months after it was due to even pay that insufficient amount. So Eisai, Inc. never paid ARC the additional $36,236.30

that it owed (and still owes) ARC for the work ARC performed under the contract before the contract was wrongfully terminated by Eisai, Inc.

24.    In addition to the $36,236.30 that Eisai, Inc. still owes ARC for the work performed by ARC pursuant the contract, as a direct and proximate result of Eisai, Inc.'s breach of the contract, as herein alleged, ARC has also been damaged in that it incurred additional costs directly associated with Eisai, Inc.'s breach of contract of at least $120,000, as well as lost profits in an amount to be proven at time of trial.

## SECOND CAUSE OF ACTION
## BRECH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Eisai, Inc.)

25.    Plaintiff hereby reincorporate by reference all the allegations in paragraphs 1 through 19 as if they were set forth in full in this paragraph.

26.    Plaintiff and Eisai, Inc. entered into a written contract pursuant to which Plaintiff would perform certain services for Defendants as a clinical trial site for a particular pharmaceutical (i.e. medication).

27.    Plaintiff did all, or substantially all, of the significant things that the contract required them to do, except for those things which Plaintiff was excused from doing.

28.    All of the conditions required for Eisai, Inc.'s performance under the contract have occurred.

29.    Defendants, Eisai, Inc. and its agents, falsely accused ARC of recruiting

FIRST AMENDED COMPLAINT

study patients from homeless shelters, which was not true, and then used that false

accusation as a pretext to terminate the contract between Eisai, Inc. and ARC which

were acts that unfairly and intentionally that interfered with ARC's right to receive the

benefits of the contract with Eisai, Inc.

30.     By terminating the contract under this false pretext, Eisai, Inc. deprived

ARC of its expectations under the contract, and breached the covenant of good faith and

fair dealing implied in all contracts under both California Law and New Jersey law as

"every contract in New Jersey contains an implied covenant of good faith and fair

dealing."  (*Sons of Thunder, Inc. v. Borden, Inc.,* 690 A.2d 575, 587, 148 N.J. 396, 420

(N.J. 1997).  Moreover, under New Jersey law even though not specifically stated in the

contract, it is implied or understood that each party to the contract must "act in good

faith and . . . deal fairly" with the other party "in . . . perform[ing] and . . . enforc[ing]"

the terms of the contract.  (*See Pickett v. Lloyd's*, 621 A.2d 445, 450, 453, 131 N.J. 457,

467, 471-472 (N.J. 1993) (citation omitted).  "To act in good faith and deal fairly, a

party must act in a way that is honest and faithful to the agreed purposes of the contract

and consistent with the reasonable expectations of the parties."  (N.J. Model Civil Jury

Charges § 4.10(J) (2011).)  "A party must not act in bad faith, dishonestly, or with

improper motive to destroy or injure the right of the other party to receive the benefits

or reasonable expectations of the contract."  (N.J. Model Civil Jury Charges § 4.10(J).)

31.     Defendants' actions, as alleged in this complaint, were and continue to be

unfair and taken in bad faith and were conscious and deliberate acts that unfairly

frustrated the agreed common purpose of the contract and disappointed the reasonable expectations of ARC to the contract.

32.    These intentional, bad-faith acts were designed to frustrate the benefits ARC was to receive under the contract.

33.    Plaintiff was and continues to be harmed as a direct result of Defendants' conduct in violation of the implied covenant of good faith and fair dealing in that, among other things, Plaintiff has lost significant sums in earned and unpaid fees and Plaintiff has suffered ongoing damage to its business, all to the harm and injury of Plaintiff, and in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH CONTRACT
### (Against All Defendants)

34.    Plaintiffs hereby reincorporate by reference all the allegations in paragraphs 1 through 19 as if they were set forth in full in this paragraph.

35.    As of early October 2019, ARC had 2 contracts with another study sponsor named Alkermes.

36.    Defendants knew that ARC had those contracts with Alkermes.

37.    Certain persons from Worldwide Clinical Trials, who upon information and belief were agents of the Defendants, intentionally made negative statements about ARC to Alkermes with the intent to disrupt ARC's relationship with Alkermes, which did in fact disrupt the contractual relationship between ARC and Alkermes, because on October 15, 2019, ARC received an email containing the following information:

"Hi Dr. Yi and Sydney,
Unfortunately, we were just informed by Alkermes that they have cancelled the

12

SIV and will not be continuing the OASIS study at your site.   The sponsor received internal information from the CRO, Worldwide Clinical Trials, which raised some concerns.  They are happy to discuss this further with you later this week.  Please let me know if you would like to further discuss this and I can set up a meeting with the Alkermes team.  Kind regards, Priya Matneja."

38.    As a result of the statements made to Alkermes by Defendants and their agents as referenced in the October 15, 2019 email, Alkermes in fact terminated and/or cancelled its two contracts with ARC, which damaged ARC in that, among other things, ARC lost profits from the contracts that Alkermes terminated/cancelled.

39.    Upon information and belief, when the statements that caused Alkermes to terminate/cancel its contracts with ARC, those statements were made by agents of all of the Defendants, including Eisai, Inc.

40.    The breach/cancellation of ARC's contracts with Alkermes damaged ARC in that it lost out on work that would have produced substantial profits to ARC.

41.    Moreover, Defendants' actions were intentional, willful, fraudulent, malicious, and oppressive.  Indeed, Defendants' conduct was intended to cause injury to Plaintiff and was despicable conduct which was carried on by Defendants with a willful and conscious disregard for the rights of Plaintiff and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.  Moreover, the Defendants' conduct was performed, authorized, and ratified by their officers, directors, and/or managing agents.  Accordingly, Plaintiff is entitled to punitive and exemplary damages in an amount according to proof.

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against All Defendants)**

42.    Plaintiffs hereby reincorporate by reference all the allegations in paragraphs 1 through 41 as if they were set forth in full in this paragraph.

43.    Because defendants Worldwide Clinical Trials Holdings, Inc. and Worldwide Clinical Trials (collectively the "Worldwide Defendants") operate as CROs within the pharmaceutical study field, Worldwide Defendants were the express agents of Eisai, Inc., and Worldwide Defendants worked closely with ARC on the contract between ARC and Eisai, Inc., upon information and belief, all of the Defendants knew that Plaintiff had prospective economic advantages and/or relationships with Alkermes, as well as other study sponsors.

44.    Defendants, through their agents, made certain statements to Alkermes about ARC that were designed to disrupt the economic relationship between ARC and Alkermes. In addition, upon information and belief, Defendants and their agents made similar statements to other study sponsors who they knew that ARC had a business relationships with prospective economic advantage for ARC, because of which statements by the Worldwide Defendants ARC lost those business relationships and their associated prospective economic advantages for ARC.

45.    As shown above, Alkermes informed ARC on October 15, 2019 that the statements made by Defendants and their agents in fact disrupted the economic

14

relationship between ARC and Alkermes, with the direct and proximate result of causing damages to ARC.  In addition, other study sponsors, including but not limited to Acadia and Eliem, had business relationships with ARC that included prospective economic advantages for ARC, which because of actions by Worldwide Defendants ARC lost those business relationships, such that ARC has not been able to become a study site for either Acadia or Eliem.

46.    Because of the intentional actions taken by Defendants, including but not limited to Defendants' actions alleged in this Complaint, when ARC attempted to monetize those prospective advantages and/or relationships by, among other things, perform services for Alkermes as a clinical trial site on pharmaceutical studies and trying to work for Acadia and Eliem, Alkermes terminated/cancelled two contracts with ARC, and later ARC was not selected to be a clinical trial site by Alkermes, Acadia, orEliem on other studies.  Upon information and belief, there are other study sponsors who but for the wrongful acts of Worldwide Defendants would have used ARC to conduct studies for them, but did not because of the acts of Defendants.

47.    ARC determined that a reason why Alkermes, as well as those third-party study sponsors with whom it had a prospective economic advantages and/or relationships, did not select ARC to be a clinical trial site was due to certain intentional actions taken by Defendants that were independently wrongful and tortious, that resulted in those third-party Study Sponsors not selecting ARC as a clinical trial site.

48.    Defendants' actions which caused ARC to lose out on being a clinical trial

15

site for those third-party study sponsors damaged ARC in that it lost out on work that would have produced substantial profits to ARC.

49.     Moreover, Defendants' actions were intentional, willful, fraudulent, malicious, and oppressive.  Indeed, Defendants' conduct was intended to cause injury to Plaintiff and was despicable conduct which was carried on by Defendants with a willful and conscious disregard for the rights of Plaintiff and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.  Moreover, the Defendants' conduct was performed, authorized, and ratified by their officers, directors, and/or managing agents.  Accordingly, Plaintiff is entitled to punitive and exemplary damages in an amount according to proof.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against All Defendants)**

50.     Plaintiff hereby reincorporates by reference all the allegations in paragraphs 1 through 49 as if they were set forth in full in this paragraph.

51.     An economic relationship existed between the ARC and study sponsors, including but not limited to Alkermes, Acadia and Eliem, as describe in this complaint, which contained a reasonably probable future economic benefit or advantage to ARC.

52.     Because defendants Worldwide Defendants operate as CROs within the pharmaceutical study field, and they worked closely with ARC on the contract between ARC and Eisai, Inc., and they were the express agents of Eisai, Inc., all of the

16

Defendants knew of the existence of the relationships and were aware or should have been aware that if they did not act with due care their actions and the actions of their agents would interfere with ARC's relationship with those other study sponsors, including Alkermes, Acadia and Eliem, and cause ARC to lose in whole or in part the probable future economic benefit or advantage of those relationships.

53.    Defendants statements about ARC made through their agents were negligent and those negligent statements caused damage to ARC in that the relationships between ARC and Alkermes, ARC and Acadia, ARC and Eliem, as well as other study sponsors, was actually interfered with or disrupted and ARC lost in whole or in part the economic benefits or advantage reasonably expected from the relationships.

54.    Because of the actions taken by Defendants, including but not limited to Defendants' actions alleged in this complaint, when ARC attempted to monetize those prospective advantages and/or relationships by, among other things, when ARC was a candidate to perform services for those third-party Study Sponsors, including but not limited to Alkermes, Acadia and Eliem, as a clinical trial site on pharmaceutical studies, ARC was not selected to be a clinical trial site.

55.    ARC later determined that a reason why Alkermes, Acadia, Eliem as well as other third-party Study Sponsors, did not select ARC to be a clinical trial site was due to actions taken by Defendants and their agents, and that they either knew, or should have reasonably known, that those actions would result in third-party Study

Sponsors, including Alkermes, to not selecting ARC as a clinical trial site, to terminate contracts with ARC or to cancel new contracts with ARC.

56.    Defendants' actions which caused ARC to lose out on being a clinical trial site for those third-party Study Sponsors was at the very least, negligent, and damaged ARC in that it lost out on work that would have produced substantial profits to ARC.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays as follows with regard to the above causes of action:

1.    For general and specific damages according to proof at time of trial, but in no event less than $1,000,000;

2.    For punitive damages, where allowed, to be determined at trial;

3.    For interest as allowed by law; and

4.    For cost of suit herein.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on its first, second, third, fourth, fifth and sixth causes of actions.

Dated:  January 19, 2023          MARK BUTLER & ASSOCIATES
                                  MARK J. BUTLER


                                  By:    _____//s// Mark J. Butler_____
                                         Mark J. Butler
                                         Attorneys for Plaintiff
                                         Advanced Research Center, Inc.

18

1

**EXHIBIT 1**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

Case 2:22-cv-02862-SSS-AFM   Document 50   Filed 01/19/23   Page 20 of 23   Page ID
#:603
Case 2:22-cv-02862-SSS-AFM   Document 38-6   Filed 07/28/22   Page 18 of 20   Page ID #:475

DocuSign Envelope ID: 5DB80FC85-8262-47CA-9EF6-D37CBE1DAB

**ATTACHMENT A**

**PAYMENT SCHEDULE AND BUDGET**

Form of Clinical Trial Agreement
Approved by Eisai Legal Department 1/2018

Case 2:22-cv-02862-SSS-AFM Document 50 Filed 01/19/23 Page 21 of 23 Page ID #:637
DocuSign Envelope ID: ...
Case 2:22-cv-02862-SSS-AFM Document 38 Filed 07/28/22 Page 19 of 20 Page ID #:476

**A. PAYMENT TERMS**

Sponsor or its designee agrees to make payments ("Study Cost") to Payee to conduct the Study in accordance with this Agreement and the Budget. Neither Institution nor Principal Investigator shall charge, request payment or accept payment from, or cause a request for reimbursement to be made to, any Study subject enrolled in the Study, their insurer or any third party payer, including Medicare or Medicaid, for: (a) the Study Drug or any comparator or adjunctive product supplied by Sponsor at Sponsor's cost or paid for by Sponsor; and/or (b) any Study Procedure (defined below) paid or reimbursed by Sponsor or Sponsor's designee. In addition, neither Institution nor Principal Investigator shall include: (i) the cost of any such drug supplied by Sponsor at Sponsor's cost or paid for by Sponsor; and/or (ii) the cost of any such Study Procedure paid or reimbursed by Sponsor or its designee in any cost report to a third-party payer, including Medicaid or Medicare.

Payments shall not include reimbursement for any items or services provided to Study subjects by either of Institution or Principal Investigator that are routine, standard-of-care services that would ordinarily be provided to the Study subject in the absence of the Study, including any of same so provided in respect of the Study subject's underlying disease(s) or condition(s). Institution shall follow its normal billing practices for routine and standard of care items and services.

Sponsor or its designee will reimburse the Payee within sixty (60) days of invoice receipt [ requires Drug Dev notice and approval for less than 30 days--- Close Out payments MUST stay at 60 days.]and/or other required documentation (e.g. completed CRFs, receipts, third-party invoices) in accordance with the Budget and this payment schedule.

**B. CRF PAYMENTS**

Sponsor or its designee will reimburse the Payee, on a completed visit per Study subject basis in accordance with the Budget. Ninety percent (90%) of each payment due, including Screening Failure, if applicable (see Section C below), will be made based upon prior month enrollment data confirmed by the Sponsor. The balance of monies earned, up to ten percent (10%), will be pro-rated upon verification of actual Study subject visits, and will be paid by Sponsor or its designee to the Payee upon final acceptance by Sponsor of all CRFs pages, all data clarifications issued, the receipt and approval of any outstanding regulatory documents as required by Sponsor and/or its designee, the return of all unused supplies to Sponsor or its designee, and upon satisfaction of all other applicable conditions set forth in this Agreement and all terms and conditions thereof.

CRF fields and pages corresponding to specific Study visits and procedures performed will be satisfactorily completed by Principal Investigator promptly after such visit or procedure, and in no event later than five (5) of less days after completion of the Study subjects' visit, study procedure or receipt of Study subject's test results, if any.

**C. SCREENING FAILURE PAYMENTS**Reimbursement for up to a maximum of 5 screen failures will be paid for screening procedures completed at the screening visit(s) as set forth on the Budget and will not exceed the amount of the screening visit(s) per screen failure. Any additional reimbursement for screen failures must be reviewed and approved by Sponsor in writing.

To be eligible for reimbursement of screening visit, Institution must submit to Sponsor or its designee completed screening CRF pages and any additional information, which may be requested by Sponsor or its designee to appropriately document that Study subject screening procedures are compliant with the inclusion/exclusion criteria listed in the Protocol. Sponsor or its designee will not reimburse Institution for any procedure(s) performed subsequent to a screening visit that had resulted in a screen failure, nor shall Sponsor or its designee reimburse Institution for any subsequent screening visit(s) or procedure that should have reasonably been expected to have resulted in a screen failure based on the results of a prior screening visit or otherwise based upon the inclusion/exclusion criteria set forth in the Protocol.

**D. ORIGINAL INVOICES & QUESTIONS**

Original invoices and payment questions pertaining to this Study for invoiceable items should be submitted to Sponsor or its designee, together with appropriate supporting documentation (e.g., receipts, and third-party invoices), for reimbursement at the following address:
Email: payments@drugdev.com
Subject Line: PROTOCOL# E2027-G000-201

DrugDev, Inc.
Attention: Global Payment Services
1170 Devon Park Drive; Suite 300
Wayne, PA 19087
Phone: 877-650-1919
Fax: 610-650-1895

Please note that invoices must contain the following information or they will be returned, which will delay payment:
• Institution Name
• Principal Investigator Name
• Protocol Number
• Invoice Date
• Date & Description of service provided
• Supporting documentation (i.e. third party invoices, receipts)

**NO OTHER ADDITIONAL FUNDING WILL BE CONSIDERED WITHOUT THE WRITTEN CONSENT OF SPONSOR OR ITS DESIGNEE.**

DocuSign Envelope ID: 5B86DF095-6B29-47EA-A9FF-6D37FCBE1DAB

PiNO E2027-201 United States (prot v1_29Jan2018)
Currency - USD






### CERTIFICATE OF SERVICE

This Certificate of Service is made in compliance with Local Rule 5.1.2 and Civ.R. 5(b). I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 2100 Main Street, Suite 220, Irvine, CA 92614.

On the date indicated below, a true and correct copy of the foregoing

### FIRST AMENDED COMPLAINT

was filed with Court and served electronically and will be available for viewing and downloading from the Court's CM/ECF system.

The Notice of Electronic Case Filing automatically generated by the system and sent to all parties entitled to service under the Federal Rules of Civil Procedure and the Local Rules of the Central District of California who have consented to electronic service shall constitute service of the filed document to all such parties.

Executed on January 19, 2023 at Irvine, CA.

I declare under penalty of perjury that I am employed in the office of a member admitted to practice before the District Court for the Central District of California and ECF registered in this Court at whose direction the service was made and that the foregoing is true and correct.

By: _____/s/_____
       Mark J. Butler