MARK BUTLER & ASSOCIATES
Mark J. Butler, Bar No. 207909
mark.butler@mbutler-law.com
2100 Main Street, Suite 220
Newport Beach, CA 92660
Telephone: (949) 500-6277

Attorney for Plaintiff Advanced Research Center, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Advanced Research Center, Inc., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> Eisai, Inc. a Delaware corporation; Worldwide Clinical Trials Holdings, Inc., a Delaware corporation; Worldwide Clinical Trials; an entity of unknown form; and DOES 1 - 50 inclusive, <br><br> Defendants. | Case No.: 22-cv-2862-SSS-AFMx <br> **SECOND AMENDED COMPLAINT FOR:** <br><br> **1) INTENTIONAL INTERFERENCE WITH CONTRACT;** <br> **2) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND** <br> **3) NEGLIGENT INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE** <br><br> **JURY TRIAL DEMANDED** <br> **REQUESTED** |

1

SECOND AMENDED COMPLAINT

Plaintiff Advanced Research Center, Inc. alleges as follows:

## PARTIES TO THE ACTION

1.  Plaintiff Advanced Research Center, Inc. ("Plaintiff" or "ARC") is and at all times relevant to this complaint was a California corporation doing business in the city of Anaheim in the State of California.

## DEFENDANTS

2.  Plaintiff is informed and believes and on that basis alleges that defendant Worldwide Clinical Trials Holdings, Inc. is, and at all times relevant to complaint was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in North Carolina.

3.  Plaintiff is informed and believes and on that basis alleges that defendant Worldwide Clinical Trials is, and at all times relevant to this complaint was, an entity of unknown form that operated in California. Plaintiff is further informed and believes and on that basis alleges that this defendant does, and at all times relevant to this complaint did, transact business in the State of California, and that some of the tortious, unlawful, unfair, fraudulent, deceptive, untrue, and misleading conduct that this defendant engaged in, as alleged in this complaint, occurred in Los Angeles County, and/or the damages from that misconduct occurred in or arose from California in Los Angeles County.

4.  Plaintiff is informed and believes and on that basis alleges that Eisai, Inc. is, and at all times relevant to this complaint was, a corporation organized and existing

under the laws of the State of Delaware with its principal place of business located in that State of New Jersey. Plaintiff is further informed and believes and on that basis alleges that Eisai does, and at all times relevant to this complaint did, transact business in the State of California, and that some of the tortious, unlawful, unfair, fraudulent, deceptive, untrue, and misleading conduct that this defendant engaged in, as alleged in this complaint, occurred in Los Angeles California and/or the damages from that misconduct occurred in or arose from California in Los Angeles County.

## DOE DEFENDANTS

5. The true names and capacities of the Defendants, DOES 1 through 50, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiff as herein alleged.

6. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named Doe Defendants is in some manner responsible for the damages to Plaintiff as alleged in this Complaint. Plaintiff will amend this Complaint to show the true names and capacities of these fictitiously named Doe Defendants after their true names and capacities have been ascertained.

7. Plaintiff is informed and believes and on that basis alleges that at all times herein mentioned, DOE DEFENDANTS 1-20 were the agents and/or joint tortfeasors of defendant Worldwide Clinical Trials Holdings, Inc., and in doing the things mentioned herein were acting within the scope of such agency and/or joint actions.

8. Plaintiff is informed and believes and on that basis alleges that at all times herein mentioned, DOE DEFENDANTS 21-40 were the agents and/or joint tortfeasors of defendant Worldwide Clinical Trials, and in doing the things mentioned herein were acting within the scope of such agency and/or joint actions.

9. Plaintiffs are informed and believe and on that basis allege that at all times herein mentioned, DOE DEFENDANTS 41-50 were the agents, employees, affiliates, related entities, and/or joint tortfeasors of Eisai, Inc., and in doing the things mentioned herein were acting within the scope of such agency, employment, affiliation, relationship and/or joint actions.

## JURISDICTION AND VENUE

10. Venue was proper in the Los Angeles County Superior Court because, upon information and belief, defendants Worldwide Clinical Trials Holdings, Inc. and Worldwide clinical trials conducted business within Los Angeles County.

11. The monetary damages sought by Plaintiff exceeds seventy-five thousand dollars, and will be established according to proof at trial.

12. The Court properly can and should apply California law to all of the claims

and issues asserted herein.  California is the state in which the contract at issue in this case was to be performed, all of Plaintiff's interaction with defendants Worldwide Clinical Trials Holdings, Inc. and Worldwide Clinical Trials took place in California, and the California is the state in which the misconduct alleged herein emanated.  As such, no state has a greater interest than California in having its law apply to this case.

## BRIEF FACTUAL BACKGROUND

13.  Plaintiff, Advanced Research Center, Inc. ("Plaintiff" or "ARC") is an entity with its principal place of business located in Anaheim, California that, among other things, contracts with companies for the human clinical testing of pharmaceuticals as part of process for new pharmaceuticals to eventually be approved by various governmental agencies for use as an approved medication.

14.  ARC entered into a written contract with defendants Eisai, Inc. whereby ARC's facility would host a clinical trial of the new pharmaceutical.  As part of this contract, ARC located potential study patients who fit certain criteria, ARC submitted those potential study patients to Eisai, Inc. and its agents defendants Worldwide Clinical Trials Holdings, Inc. and Worldwide Clinical Trials (all three collectively "Defendants") for Defendants' approval of the patients to be in the study conducted by ARC.  ARC conducted a clinical trial of the new pharmaceutical on the study patients that were approved by Defendants, with ARC reporting on the patients while the clinical trial was ongoing.

15.  As part of its performance under the contract, ARC in fact located a

number of potential study patients, and submitted those potential study patients to Defendants for their approval as study participants.

16. Defendants approved a number of the patients located and submitted to them by ARC, and ARC enrolled only those patients approved by Defendants in the study and conducted the study/clinical trial under the terms of its contract with Eisai, Inc. and the associated protocols. In performing its obligations under the contract, ARC met all of its material obligations using those patients approved by Defendants. In mid-2019, while the clinical trial was ongoing, Defendants made false claim that ARC had improperly recruited some of its study patients from homeless shelters. That was false, but Defendants used that false allegation as a pretext for terminating ARC as a study site before the completion of the study. So Defendants terminated Plaintiffs as a study site under that false pretense despite the fact that ARC was properly following all protocols and fully performing all of its material obligations under its contract with Eisai, Inc.

17. In addition to falsely accusing ARC of recruiting patients from homeless shelters, and using that false allegation as a pretext to improperly terminate ARC as a study site, Eisai, Inc. breached the contract by failing to fully and to timely pay ARC's fees earned for the work performed by ARC pursuant to the terms of the contract. Moreover, not only did Eisai, Inc. fail to timely pay the amounts owed ARC when due pursuant to the contract terms, but even after ARC complained about that failure, and even after ARC spent well over a month challenging Defendants' position regarding the

actual amount due ARC for work performed by ARC on the study before Defendants' terminated the contract, and even after Defendants arrived to Defendants' (incorrect) stated position as to how much Eisai, Inc. admittedly owed ARC (which amount was not correct), Eisai, Inc. continued to fail to even tender to ARC the amount that Defendants acknowledged that Eisai, Inc. owed to ARC for well over 6 months after Defendants came to their incorrect calculation.  In addition, when Eisai, Inc. did finally tender the insufficient payment to ARC, Eisai, Inc. attempted to condition that payment of the funds upon two conditions: 1) Eisai, Inc. insisted that ARC agree that Defendants' incorrect calculation of the amount owed by Eisai, Inc. was in fact correct (when it was not) and represented payment in full to ARC for all of the work/services ARC performed under the contract, when in fact the actual amount ARC was owed under the express terms of the contract was much more than the amount as calculated by Defendants; and 2) Eisai, Inc. also insisted that ARC sign a written release before Eisai, Inc. would pay ARC, releasing all of Defendants from any and all claims related to Defendants' wrongful conduct toward ARC.  ARC steadfastly refused to agree to any such release, or to the accuracy of the amounts Eisai, Inc. claimed it owed ARC, and never released any of the Defendants despite intense financial pressure resulting from Defendants' wrongful conduct and the extreme damage they caused ARC.

18.   Moreover, after Defendants improperly terminated ARC as a study site, other Study Sponsors with which ARC had agreements to act as a clinical trial study site for other pharmaceutical studies breached and/or cancelled their agreements with

7

ARC. ARC later determined that Defendants had actively contacted some of those other Study Sponsors and made statements to those other Study Sponsors which caused those other Study Sponsors to breach or cancel their contracts with ARC, or stop doing future business with ARC.

19. In addition, after Defendants improperly terminated ARC as a study site, on multiple occasions ARC applied to be a study site with other Study Sponsors with which ARC had a previous business relationship, but ARC was not selected as a study site. ARC later determined that the reason it was not selected as a study site by those Study Sponsors with which it had a previous relationship was because Defendants affirmative, improper and ongoing tortious actions against ARC interfered with ARC's relationship with those other Study Sponsors, resulting ARC not being selected by them as a study site by them.

**FIRST CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH CONTRACT**
**(Against Worldwide Clinical Trials Holdings, Inc., and Worldwide Clinical Trials)**

20. Plaintiffs hereby reincorporate by reference all the allegations in paragraphs 1 through 19 as if they were set forth in full in this paragraph.

21. As of early October 2019, ARC already had a written contract as of July 2019 with another study sponsor commonly known as Alkermes, for which Alkermes agreed to pay ARC for a work on a study referred to as the "OASIS" that was to be conducted at ARC's facility in Anaheim California.

22. The Worldwide Defendants knew that ARC had those contracts with Alkermes because Worldwide Clinical Trials was the CRO engaged to supervise the

OASIS Study for Alkermes that was to be conducted at the ARC facility, just like the prior Eisai Study at the ARC facility.

23. Certain persons from Worldwide Clinical Trials intentionally made negative statements about ARC to Alkermes with the intent to disrupt ARC's relationship with Alkermes, which did in fact disrupt the contractual relationship between ARC and Alkermes, because on October 15, 2019, ARC received an email containing the following information:

> "Hi Dr. Yi and Sydney,
> Unfortunately, we were just informed by Alkermes that they have cancelled the SIV and will not be continuing the OASIS study at your site. **The sponsor received internal information from the CRO, Worldwide Clinical Trials, which raised some concerns**. They are happy to discuss this further with you later this week. Please let me know if you would like to further discuss this and I can set up a meeting with the Alkermes team. Kind regards, Priya Matneja."

24. As a result of the statements made to Alkermes as referenced in the October 15, 2019 email, Alkermes in fact terminated and/or cancelled its OASIS Study contract with ARC, which damaged ARC in that, among other things, ARC lost profits from the contract that Alkermes terminated/cancelled for the OASIS Study.

25. Upon information and belief, when the statements that caused Alkermes to terminate/cancel its contracts with ARC, those statements were made by agents of all of the Worldwide Defendants.

26. The breach/cancellation of ARC's contract with Alkermes damaged ARC in that it lost out on work that would have produced substantial profits to ARC.

27. Moreover, Worldwide Defendants' actions were intentional, willful, fraudulent, malicious, and oppressive. Indeed, the Worldwide Defendants' conduct was

intended to cause injury to Plaintiff and was despicable conduct which was carried on by them with a willful and conscious disregard for the rights of Plaintiff and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. Moreover, upon information and belief, the Worldwide Defendants' conduct was performed, authorized, and ratified by their officers, directors, and/or managing agents. Accordingly, Plaintiff is entitled to punitive and exemplary damages in an amount according to proof.

**SECOND CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against** Worldwide Clinical Trials Holdings, Inc., a Delaware corporation and Worldwide Clinical Trials**)**

28. Plaintiffs hereby reincorporate by reference all the allegations in paragraphs 1 through 27 as if they were set forth in full in this paragraph.

29. Because defendants Worldwide Clinical Trials Holdings, Inc. and Worldwide Clinical Trials (collectively the "Worldwide Defendants") operated as CRO on the Alkermes OASIS Study for which ARC had contracted with Alkermes, the Worldwide Defendants knew that Plaintiff had prospective economic advantages and/or relationships with Alkermes.

30. The Worldwide Defendants made certain statements to Alkermes about ARC that were designed to disrupt the economic relationship between ARC and Alkermes. In addition, upon information and belief, Defendants and their agents made

similar statements to other study sponsors who they knew that ARC had a business relationships with prospective economic advantage for ARC, because of which statements by the Worldwide Defendants ARC lost those business relationships and their associated prospective economic advantages for ARC.

31. As shown above, Alkermes informed ARC on October 15, 2019 that the statements made by Defendants and their agents in fact disrupted the economic relationship between ARC and Alkermes, with the direct and proximate result of causing damages to ARC. In addition, other study sponsors, including but not limited to Acadia and Eliem, had business relationships with ARC that included prospective economic advantages for ARC, which because of actions by Worldwide Defendants ARC lost those business relationships, such that ARC has not been able to become a study site for either Acadia or Eliem.

32. Because of the intentional actions taken by Defendants, including but not limited to Defendants' actions alleged in this Complaint, when ARC attempted to monetize those prospective advantages and/or relationships by, among other things, perform services for Alkermes as a clinical trial site on pharmaceutical studies and trying to work for Acadia and Eliem, Alkermes terminated/cancelled two contracts with ARC, and later ARC was not selected to be a clinical trial site by Alkermes, Acadia, or Eliem on other studies. Upon information and belief, there are other study sponsors who but for the wrongful acts of Worldwide Defendants would have used ARC to conduct studies for them, but did not because of the acts of Defendants.

33. ARC determined that a reason why Alkermes, as well as those third-party study sponsors with whom it had a prospective economic advantages and/or relationships, did not select ARC to be a clinical trial site was due to certain intentional actions taken by Defendants that were independently wrongful and tortious, that resulted in those third-party Study Sponsors not selecting ARC as a clinical trial site.

34. Defendants' actions which caused ARC to lose out on being a clinical trial site for those third-party study sponsors damaged ARC in that it lost out on work that would have produced substantial profits to ARC.

35. Moreover, Defendants' actions were intentional, willful, fraudulent, malicious, and oppressive. Indeed, Defendants' conduct was intended to cause injury to Plaintiff and was despicable conduct which was carried on by Defendants with a willful and conscious disregard for the rights of Plaintiff and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. Moreover, the Defendants' conduct was performed, authorized, and ratified by their officers, directors, and/or managing agents. Accordingly, Plaintiff is entitled to punitive and exemplary damages in an amount according to proof.

## THIRD CAUSE OF ACTION
## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
(Against Worldwide Clinical Trials Holdings, Inc. and Worldwide Clinical Trials)

36. Plaintiff hereby reincorporates by reference all the allegations in paragraphs 1 through 35 as if they were set forth in full in this paragraph.

37. An economic relationship existed between the ARC and study sponsors, including but not limited to Alkermes, Acadia and Eliem, as describe in this complaint, which contained a reasonably probable future economic benefit or advantage to ARC.

38. Because the Worldwide Defendants operated as CRO within the pharmaceutical study field including for the Alkermes OASIS Study that ARC had contracted to perform for Alkermes, and upon information and belief the Worldwide Defendants acted as CROs on studies for other study sponsors, including Acadia and Eliem, for which ARC had either performed study services or sought to perform study services the Worldwide Defendants knew of the existence of the relationships and were aware or should have been aware that if they did not act with due care their actions and the actions of their agents would interfere with ARC's relationship with those other study sponsors, including Alkermes, Acadia and Eliem, and cause ARC to lose in whole or in part the probable future economic benefit or advantage of those relationships.

39. The Worldwide Defendants statements about ARC, upon information and belief, included false statements about ARC's performance of the Eisai Study in which the Worldwide Defendants acted as CRO and caused Eisai to improperly terminate ARC from the Eisai Study based on the false accusation that ARC had improperly recruited certain study patients for the Eisai Study, but those accusation about improperly recruiting study patients were false, as later verified by multiple agencies, including the US Food and Drug Administration, and thus by communicating information about those false accusation to Alkermes, and upon information and belief

to Acadia and Eliem, the Worldwide Defendants were negligent.  Moreover, ARC had previously worked on studies for Acadia and had applied to work on a study for Eliem, for which upon information and belief the Worldwide Defendants operated at the CRO, and as a result ARC did not get any new studies from Acadia and Eliem where the Worldwide Defendants operated as the study CRO such that those negligent statements caused damage to ARC in that the relationships between ARC and Alkermes, ARC and Acadia, ARC and Eliem, as well as other study sponsors, was actually interfered with or disrupted and ARC lost in whole or in part the economic benefits or advantage reasonably expected from the relationships.

40.   Because of the actions taken by Defendants, including but not limited to Defendants' actions alleged in this complaint, when ARC attempted to monetize those prospective advantages and/or relationships by, among other things, when ARC was a candidate to perform services for those third-party Study Sponsors, including but not limited to Alkermes, Acadia and Eliem, as a clinical trial site on pharmaceutical studies, ARC was not selected to be a clinical trial site.

41.   ARC later determined that a reason why Alkermes, Acadia, Eliem as well as other third-party Study Sponsors, did not select ARC to be a clinical trial site was due to actions taken by Defendants and their agents, and that they either knew, or should have reasonably known, that those actions would result in third-party Study Sponsors, including Alkermes, to not selecting ARC as a clinical trial site, to terminate contracts with ARC or to cancel new contracts with ARC.

42. Defendants' actions which caused ARC to lose out on being a clinical trial site for those third-party Study Sponsors was at the very least, negligent, and damaged ARC in that it lost out on work that would have produced substantial profits to ARC.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays as follows with regard to the above causes of action:

1. For general and specific damages according to proof at time of trial, but in no event less than $1,000,000;
2. For punitive damages, where allowed, to be determined at trial;
3. For interest as allowed by law; and
4. For cost of suit herein.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on its first, second, third, fourth, fifth and sixth causes of actions.

Dated: July 7, 2023                    MARK BUTLER & ASSOCIATES
                                       MARK J. BUTLER


                                       By:      //s// Mark J. Butler
                                            Mark J. Butler
                                            Attorneys for Plaintiff
                                            Advanced Research Center, Inc.